# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5838 | **DATE** | 11/18/2003 |
| **CASE TITLE** | Satya Rao vs. County of Cook, Illinois | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Motion for Summary Judgment [#34] is hereby **granted.** AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 3 | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | NOV 1 9 2003 | 51 |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | 11/18/2003 | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| FT/ peng | courtroom deputy's initials | | | FT | mailing deputy initials |
| | | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SATYA RAO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 5838 |
| | ) | |
| | ) | Magistrate Judge |
| vs. | ) | Arlander Keys |
| | ) | |
| COUNTY OF COOK, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant's Motion for Summary
Judgment, filed pursuant to Fed. R. Civ. P. 56. Plaintiff claims
that, as an employee of the John H. Stroger Hospital ("the
Hospital"), she was subjected to discrimination based upon her
national origin and race, racial harassment, and retaliation in
violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C
§ 2000e *et seq.* (West 2003), and 42 U.S.C. § 1981 (West 2003).
For the reasons set forth below, Defendants' Motion is granted.

### Background Facts

In July of 1979, Plaintiff began working for the Hospital,
as a Registered Nurse in the Neonatal Intensive Care Unit
("NICU"). On February 23, 1998, the Hospital posted an opening
for the position of Clinical Nurse II ("CN II"), in Ward 36 of
the Pediatric Unit. Plaintiff and two of her colleagues, Ms.
Lorna Arriola and Ms. Sriluk Sungkapan, applied for the opening.
The Hospital hired Ms. Arriola, a nurse of Filipino descent, for
the position, and notified Plaintiff that she was not being

promoted, at least in part, because of prior disciplinary notations in her personnel file.

Plaintiff filed a grievance challenging the decision to promote Ms. Arriola over her, claiming that she was denied the position because the Hospital improperly considered the outdated disciplinary notations. Ms. Angeles Montefolka, the Division Director of Pediatrics at the Hospital, denied Plaintiff's grievance. On July 16, 1998, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the Hospital denied Plaintiff the promotion in retaliation for Plaintiff having previously filed a charge of discrimination against the Hospital with the Illinois Department of Human Rights in 1988. In EEOC Charge #210983298, Plaintiff marked only the "Retaliation" box on the form and listed May 22, 1998 - the date she was denied the promotion - as the date on which the discrimination occurred.

Plaintiff's EEOC Charge attracted the attention of Claudette Giles, Cook County's EEO Compliance Officer, Veronica Bather-West, the Hospital's Associate Director of Human Resources, and Sandra Broussard, the Hospital's Labor Relations Manager. They reviewed Plaintiff's Charge, personnel file, and other evidence, and determined that the decision to deny Plaintiff the promotion was based, in part, upon the outdated disciplines. Accordingly, the Hospital agreed to settle Plaintiff's EEOC Charge and agreed

2

to place Plaintiff in another CN II position, which recently had become available.

As CN II in the Neonatal ICU, Plaintiff reported to Nurse Coordinator Ms. Sapaula, who in turn reported to Ms. Montefolka. Plaintiff's transition to the CN II position was hardly a smooth one. Plaintiff claims that a group of Filipino nurses working in the Neonatal Unit openly conspired to have Plaintiff removed from the unit. Plaintiff does not explain precisely what motivated these nurses to target her (as opposed to other non-Filipino nurses), but claims that the group began harassing her and operated with the implicit approval of Ms. Sapaula, who is also Filipino.

Defendant agrees that Plaintiff had difficulty adjusting to the CN II position, but blames Plaintiff's performance deficiencies for the rocky transition. Defendant explains that Ms. Sapaula first assigned Lorna Arriola to train Plaintiff in the new position. Personality conflicts and Plaintiff's complaints encouraged Ms. Sapaula to subsequently assign Ms. Eulalee Walters, also a CN II, to assist with Plaintiff's orientation instead. Several months after assuming the new position, Plaintiff stated that she had achieved only 25% of her desired development. On March 11, 1999, Ms. Sapaula met with Plaintiff to discuss her performance. Ms. Sapaula informed Plaintiff that she needed to improve her performance in

3

a number of areas, including (but not limited to) patient assignment; tact and diplomacy in interacting with her nursing staff; and maintaining proper documentation.

Despite Ms. Sapaula's admonishment, between May 1999 and September 1999, Ms. Sapaula received multiple complaints from the nursing staff and doctors about Plaintiff's performance. Plaintiff was accused of being rude to the nursing staff; failing to provide accurate nursing documentation; failing to accurately administer medication; making inappropriate staffing assignments; submitting incomplete or inaccurate census data; submitting incomplete documentation and discharge notes; falsifying documentation; failing to properly endorse patients; and failing to properly schedule and document patient eye examinations. Each time she received a complaint, Ms. Sapaula consulted with Plaintiff and counseled her to improve in the complained of areas. When Ms. Sapaula received yet another complaint about Plaintiff on September 17, 1999, she filed internal disciplinary charges against Plaintiff.

On October 15, 1999 Plaintiff filed a Charge of Discrimination with the EEOC, stating that the pending disciplinary action concerning the events of September 17, 1999 was illegal retaliation for having previously filed an EEOC Charge of Discrimination. Although the EEOC Charge itself provides only sparse details about the alleged retaliation,

Plaintiff more fully articulates her complaints in her Response

to Defendant's Motion for Summary Judgment.  Plaintiff contends

that the barrage of complaints filed against her was simply part

and parcel of the Filipino nurses' harassment plan, stating that

only one of the complaints against her was lodged by a non-

Filipino nurse.  The evidence, however, is to the contrary;

Defendant's documentation demonstrates that at least two doctors

and two non-Filipino nurses complained of Plaintiff's performance

deficiencies.  Plaintiff also alleges that Ms. Sapaula encouraged

the staff to lodge complaints against her (presumably as part of

the campaign to drive Plaintiff from the CN II position).

On October 20, 1999, Plaintiff was brought to a Pre-

Disciplinary Hearing on charges of: a) Falsification of Patient

Medical Records; and b)Failure to follow Basic Documentation

Standards.  The hearing officer upheld the charges, and suspended

Plaintiff for one day, pursuant to the Hospital's progressive

disciplinary action policy.  Plaintiff did not grieve her

suspension.  Instead, Plaintiff submitted to Ms. Sapaula a letter

setting forth vague incidents, which Plaintiff labeled

discrimination and/or harassment on the part of her coworkers and

Ms. Sapaula.  Ms. Sapaula investigated Plaintiff's complaints,

and attempted to meet with Plaintiff on November 4 and 10, 1999,

to address the issues raised in Plaintiff's letter.  Plaintiff

refused to meet with Ms. Sapaula.  Ms. Montefolka also

investigated the issues raised in Plaintiff's letter to Ms. Sapaula, and concluded that Plaintiff's complaints could not be substantiated.

On October 27, 1999, Nurse Tasana Tongkaroon submitted an Incident Report, claiming that Plaintiff failed to comply with Basic Standards of Practice in the NICU. Two days later, on October 29, 1999, Ms. Sapaula issued Plaintiff a verbal reprimand in response to Ms. Tongkaroon's Report. Plaintiff fired back by filing yet another Charge of Discrimination with the EEOC on November 4, 1999, complaining that the verbal reprimand was issued in retaliation for having previously filed an EEOC Charge of Discrimination, and for writing letters of complaint to the Hospital.

Ms. Sapaula subsequently scheduled a meeting between Plaintiff and Joanne Clark, Psyche Liaison, to assist Plaintiff in coping with the stress and negative feedback from the nursing staff. Plaintiff cancelled the meeting on November 24, 1999 – the date the meeting was scheduled to take place. The complaints against Plaintiff continued to make their way to Ms. Sapaula's desk. On November 22, 1999 and December 2 and 6, 1999, Ms. Sapaula counseled Plaintiff about her squabbles with coworkers, for improper patient documentation, for failing to properly address patient acuity, and for failing to distribute the patient load fairly.

On December 20, 1999, Plaintiff was brought to a Pre-Disciplinary Hearing on a number of familiar charges. The Hearing Officer upheld the charges and suspended Plaintiff for two days; Plaintiff did not grieve the suspension. If the number and type of complaints against Plaintiff are a true indication of her performance, it would seem that the progressive discipline had little impact. Ms. Sapaula counseled Plaintiff again on February 4, 2000, in response to complaints that Plaintiff frequently made spelling mistakes in her charting, placed incorrect information on a patient's medication, and misidentified a patient in her charting.

On February 18, 2000, Claudette Giles, Cook County's EEO Compliance Officer, met with Plaintiff regarding the allegations she raised in EEOC Charge No. 210A00463. During the meeting, Ms. Giles claims that Plaintiff admitted that she had placed an infant in a cold isolette and that she had incorrectly transcribed a doctor's order. Nevertheless, Plaintiff maintained that the disciplinary action taken against her was motivated by unlawful retaliation and discrimination. On March 5, 2000, Plaintiff supplemented the statement she made to Ms. Giles at the meeting, and submitted to Ms. Giles a letter detailing her claims of harassment and discrimination.

In the interim, however, Plaintiff was brought to yet another Pre-Disciplinary Hearing on February 23, 2000. The

charges against her included: lack of accurate nursing documentation; unsafe nursing practices; failure to perform at a satisfactory level as a Registered Nurse; and failure to work in accordance with Hospital policies, procedures, and practices. The charges were upheld and Plaintiff was suspended for five days. This time, Plaintiff grieved the suspension. A suspension appeal hearing was held on November 7, 2000, and the Hearing Officer determined that the suspension was given for just cause. Plaintiff grieved this determination as well, and the action was referred to an arbitrator. The arbitrator concluded that Plaintiff's performance was deficient, but reduced the suspension to a verbal reprimand because the Hospital did not satisfy the requirements of progressive discipline, because it failed to "document [Plaintiff's] past conduct" at the arbitration.

On May 9, 2000, Plaintiff submitted a letter to Ms. Sapaula, alleging that she was being assigned to patient care more frequently than other CN IIs – specifically, Ms. Walters and Ms. Arriola - and complained that the disproportionate share of patient care time she was receiving was discrimination. Defendant notes that there is no difference in pay or seniority for each of the three assignments comprising the CN II position (which includes Patient Care, Charge Nurse, and Continuity Care Coordinator), but does not deny that Ms. Sapaula apparently shifted many of Ms. Arriola's patient care hours to Plaintiff.

Nor does Defendant dispute Plaintiff's characterization of the patient care duties as the least desirable of a CN II's responsibilities.

On May 12, 2000, Ms. Sapaula met with Plaintiff, and suggested that Plaintiff submit a proposed patient care schedule, which she did. Ms. Sapaula implemented Plaintiff's proposed schedule, which provided for an equal distribution of patient care duty among the three CN II nurses, in June 2000.

On May 31, 2000, several Filipino nurses complained that Plaintiff had repeatedly denied their requests for assistance. On June 26, 2002, Plaintiff was brought to a Pre-Disciplinary Hearing on charges of: altering a patient's medical records; unsafe nursing practices; and failure to function as a Registered Nurse. The charges were upheld and Plaintiff was suspended for five days. Plaintiff did not grieve the suspension.

On June 30, 2000, Claudette, Giles convened a meeting with Ms. Montefolka, the nurses assigned to Ward 36 (including Plaintiff), and their union representatives to discuss the challenges created by the diverse culture in the unit. At the meeting, Ms. Giles emphasized that there were laws governing how the nurses should interact and that prohibited discrimination and harassment. Plaintiff did not attend the meeting.

Plaintiff filed another charge with the EEOC, alleging that she was being retaliated against for having filed previous

charges of discrimination. Specifically, Plaintiff complained that the five day suspension she received on February 5, 2000 was merely a pretext for unlawful retaliation. Plaintiff filed yet another Charge of Discrimination on July 28, 2000, claiming that her June 30, 2000 discipline was in retaliation for her decision to submit the May 9, 2000 letter alleging that the patient care assignments were being disproportionately (and discriminatorily) given to her.

On June 26, 2000, the EEOC sent Plaintiff her Notice of Right to Sue letter, stemming from Charge Nos. 210A00202 (filed on October 15, 1999) and 210A00463 (filed on November 4, 1999). On August 21, 2000, the EEOC sent Plaintiff her Notice of Right to Sue on Charge No. 210A03828, which Plaintiff had filed on July 5, 2000. Finally, on August 14, 2000, the EEOC sent Plaintiff her Notice of Right to Sue on Charge No. 210A4155, which Plaintiff had filed on July 28, 2000. Plaintiff filed suit against the Hospital on September 25, 2000, and later amended her Complaint to name Cook County as the proper Defendant.

### Summary Judgment Standards

Courts should grant summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Initially, the moving party bears the burden of showing that the record contains no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The non-moving party must present more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, "mere conclusory" allegations are not sufficient to survive summary judgment. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). The non-moving party must present sufficient evidence to support each element of her case on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Courts do not make "credibility determinations nor choose between competing inferences" at the summary judgment stage. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Further, the court must view the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

In addition, pursuant to Northern District of Illinois Local Rule 56.1, the parties must support all disputed facts with "specific references to . . . parts of the record." Courts need not "scour the record" in an attempt to locate the relevant information supporting the Rule 56.1 claims. *Waldridge v.*

*American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). The Seventh Circuit has repeatedly "sustained the entry of summary judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Id.; see also Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (all relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary materials.")

In this case, Plaintiff has failed to properly object to and/or deny nearly all of Defendant's asserted (and properly supported) statements of fact. In addition, Plaintiff repeatedly failed to support her responses to Defendant's Statement of Facts with admissible evidence. *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267-68 (7th Cir. 1994)(only admissible evidence may be considered on summary judgment.) In other instances, Plaintiff discusses "evidence" in her brief, which purportedly supports her position, that is not included in either parties' statement of fact[1]. Therefore, despite Plaintiff's *pro*

---

[1] For example, Plaintiff claims that numerous other individuals at the Hospital were aware of the discrimination Plaintiff suffered, without identifying who those individuals were or submitting supporting affidavits from those individuals. *See* Pl.'s Br. at p. 22-23 (Plaintiff claims that two non-Filipino nurses witne*ssed a* Filipino nurse harassing Plaintiff, but that they feared being sanctioned if they came forward. Plaintiff

12

*se* status, the Court has little choice but to largely adopt Defendant's version of the facts in deciding Defendant's Motion.

## DISCUSSION

In her First Amended Complaint, Plaintiff asserts four causes of action: 1) national origin and race discrimination in violation of Title VII; 2) national origin and race discrimination in violation of § 1981; 3) retaliation in violation of Title VII; and 4) harassment based upon national origin and race discrimination in violation of Title VII.

Before turning to the merits of these claims, the Court addresses Defendant's claim that Counts I and IV of Plaintiff's Complaint are outside of the Scope of Plaintiff's EEOC Charges.

## I. Plaintiff's Title VII Discrimination Claims are Within the Scope of Her EEOC Charges.

Claims brought under Title VII are limited by the scope of the plaintiff's EEOC charge. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 (1974). The strict "rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employee some warning of the conduct about which

---

goes on to say that one of those witnesses is now retiring and willing to testify. Yet, Plaintiff does not identify that witness or include an affidavit or other evidence from the witness documenting the incident. "[T]he district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' Statements." *Bordelon v. Chicago School Reform Board of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000)

the employee is aggrieved." *Cheek v. W. & S. Life Ins. Co.*, 31
F.3d 497, 500 (7th Cir. 1994) (internal citations omitted).

The EEOC charge need not contain every single fact that
combines to form the basis of each claim in the Title VII
plaintiff's complaint. *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d
1188, 1195 (7th Cir. 1992). To be considered within the scope of
the charge, the complained of conduct must be "like or reasonably
related to" the conduct described in the EEOC charge *Jenkins v.
Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.
1976)(en banc) (quoting *Danner v. Phillips Petroleum Co.*, 447
F.2d 159, 162 (5th Cir. 1971)), and "reasonably be expected to
grow out of" the EEOC's investigation into the charge. *Cheek*, 31
F.3d at 500. Courts recognize that lay persons, not lawyers, fill
out EEOC charges, and that a fair amount of latitude is allowed
in determining what is within the scope of the charge. *Id.*

At first glance, Plaintiff's Title VII claims do not
"describe the same conduct and implicate the same individuals" as
the claims set forth in her EEOC Charges. *Harper v. Godfrey
Co.*, 45 F.3d 143, 148 (7th Cir. 1995) (citing *Jenkins*, 538 F.2d
at 167). In her various EEOC Charges, Plaintiff claims that she
was subjected to disciplinary action because of her previously
filed EEOC Charges. In each of her four EEOC Charges, Plaintiff
checked only the Retaliation box on the charge form, and listed
the date she suffered some form of an adverse job action as the

14

date on which the discrimination occurred. None of the EEOC Charge Forms complains that Plaintiff suffered disparate treatment or was harassed because of her race or national origin.

When faced with a strikingly similar charge, the district court in *Lamas v. Freeman Decorating Co.,* rejected the plaintiff's claim that his retaliation charge could support a discrimination claim simply because the described retaliation charge grew out of and mentioned the plaintiff's earlier discrimination charge. 37 F. Supp. 2d 1105, 1106 (N.D. Ill. 1999). The court noted that Seventh Circuit precedent holds that administrative charges of retaliation cannot generally support civil suits for discrimination. *Id.* citing *Noreuil v. Peabody Coal Co.,* 96 F.3d 254, 258 (7th Cir. 1996).

Although the plaintiff mentioned his previous national origin claim in his EEOC charge, the court explained that the plaintiff did so only to show the defendant's motivation for retaliating against him, and that lashing out against an employee for exercising his right to file an EEOC charge is fundamentally different than acting out of animosity for the employee's race or national origin. *Lamas*, 37 F. Supp.2d at 1106. *See also, Heuer v. Weil-McLain,* 203 F.3d 1021, 1022-23 (7th Cir. 2000) ("The charge arose out of Turner's earlier creation of a hostile working environment motivated by Heuer's sex, but that is too remote a connection, for otherwise every claim of retaliation for

filing charges of discrimination would be a claim of discrimination, even though Title VII makes discrimination and retaliation separate wrongs.")

Nevertheless, it would appear that Defendant's own investigation into Plaintiff's EEOC Charges (as opposed to the EEOC's investigations) readily revealed Plaintiff's claims of discrimination. Defendant's EEO Compliance Officer, Claudette Giles, interviewed Plaintiff on February 18, 2000, regarding the allegations raised in Plaintiff's EEOC Charge No. 210A00463. Plaintiff revealed to Ms. Giles, both during the interview and subsequently in a letter, that she believed that she was being discriminated against and harassed. *See* Def. Ex.63 (Plaintiff's Statement to Ms. Giles) and Ex. 65 (Plaintiff's 3/5/00 letter to Ms. Giles). These statements clearly set forth Plaintiff's contention that she was harassed and received less-preferential treatment because (Plaintiff claims) she was a non-Filipino nurse.

More importantly, Plaintiff apparently submitted an addendum to the EEOC Charge that she filed on July 5, 2000[2] (EEOC Charge #210A03828, Pl.'s Ex. 65), which claimed that, while Ms. Sapaula investigated every mistake Plaintiff made, Ms. Sapaula did not

_____

[2]    The Court notes, however, that this document is not authenticated, and there is no evidence from the EEOC Charge itself that Plaintiff actually submitted this addendum to the EEOC

16

investigate mistakes made by Filipino nurses. Plaintiff explicitly states such behavior constitutes discrimination.

But Plaintiff's failure to address Defendant's scope of the charge argument presents yet another hurdle for her to overcome. Plaintiff failed to set forth any argument whatsoever in response to Defendant's claim that Plaintiff's discrimination and harassment claims are not reasonably related to the retaliation claims described in Plaintiff's EEOC Charges. *See Harris v. University of Illinois at Chicago*, No. 97 C 4783, 1999 WL 281346, at *9 (N.D. Ill. Mar. 31, 1999) (failing to address a defendant's scope of the charge claim results in waiver); *Lewis v. Xerox Corp.*, 1998 WL 160893, at *6 (N.D. Ill. 1998) (same).

However, the Court is mindful of Plaintiff's *pro se* status, and that it is preferable to further the remedial purposes of Title VII when possible. And given the evidence that Defendant was aware of Plaintiff' discrimination claims – despite the fact that they were not set forth on the EEOC Charge forms – the Court agrees that Plaintiff's Title VII claims are within the scope of her EEOC charges. Nevertheless, the Court concludes that Counts I and IV cannot survive Defendant's Motion for Summary Judgment.

## II. **Disparate Treatment Under Title VII and § 1981**

In her Amended Complaint, Plaintiff claims that she was treated differently because of her race and national origin. Both Title VII and § 1981 prohibit employers from discriminating

17

against employees in the terms, conditions, or privileges of employment based on the employees' national origin and race. 42 U.S.C. § 2000e *et seq.* (West 2003); 42 U.S.C. § 1981 (West 1983). "While 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially the same." *Van Zuckerstein v. Argonne Nat'l Labs,* 984 F.2d 1467, 1472 (7th Cir. 1993). Both statutes permit an employee to satisfy her burden of proving intentional discrimination either by presenting direct evidence of discriminatory intent, or though the indirect, *McDonnell-Douglas* burden shifting method of proof. *O'Neal v. City of New Albany,* 293 F.3d 998, 1003 (7th Cir. 2002). Therefore, the Court will analyze both Count I (discrimination under Title VII) and Count II (discrimination under § 1981) simultaneously.

Plaintiff has not presented direct or circumstantial evidence of discriminatory intent, and must, therefore, present sufficient evidence of discrimination under the *McDonnell-Douglas* method of proof to survive summary judgment. To establish her prima facie case, Plaintiff must demonstrate that: 1) she belongs to a protected class; 2) her performance satisfied her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) she was treated less favorably than similarly situated persons outside of her protected class, or that her employer's actions were otherwise based on legally impermissible

grounds. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397-98 (7th Cir. 1997); *Carson v. Bethlehem, Steel Corp.*, 82 F.3d 157, 158-59 (7th Cir. 1996). If Plaintiff can establish her prima facie case, the burden shifts to her employer to articulate a legitimate, non-discriminatory reason for the adverse job action. *Janiuk v. TCG Trump & Co.*, 157 F.3d 504, 507 (7th Cir. 1998). If the employer is successful, the burden reverts back to Plaintiff to show that the employer's proffered explanation is a mere pretext for discrimination. *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1166 (7th Cir. 1997).

Plaintiff cannot satisfy her initial burden of establishing a prima facie case of discrimination. Neither party disputes that Plaintiff is a member of a protected class, but Plaintiff has failed to present sufficient evidence that she was meeting her employer's legitimate job expectations. Defendant has produced evidence that numerous employees consistently complained about Plaintiff's performance deficiencies from virtually the beginning of her tenure as a CN II. After months of counseling, Plaintiff was brought to four separate disciplinary hearings on serious charges of deficiency, and each time the charges were upheld[3].

---

[3] On two occasions, however, the disciplinary sanctions against Plaintiff were subsequently withdrawn or reduced, because the Hospital violated procedural rules – even though the underlying charges against Plaintiff were upheld. *See,* Pl's Ex. 41: The charges against Plaintiff from the 4/1/02 hearing were

Against this, Plaintiff presents only her affidavit that she was being unfairly targeted for discipline, as part of a conspiracy to have her removed from the CN II position. *See Payne v. Pauley,* 337 F.3d 767, 772 (7th Cir. 2003) (a plaintiff cannot speculate as to an employer's state of mind, and must have personal knowledge of the matters within her affidavit.) While Plaintiff claims that multiple people were aware that the Filipino nurses and her Filipino supervisors were discriminating against her and other non-Filipino workers, Plaintiff has not submitted a single affidavit verifying this claim. Notably, Plaintiff neither denies that most of the underlying incidents giving rise to the complaints against her actually occurred, nor disputes Defendant's contention that these deficiencies were unacceptable.

Similarly, Plaintiff has failed to present evidence giving rise to a genuine issue as to whether similarly situated persons outside of her protected class were treated more favorably. On some occasions, Plaintiff's affidavit makes the too-broad

upheld, but the resulting suspension was voided, because the hearing was wrongfully held more than 30 days from the date of the underlying incidents. This is consistent with Plaintiff's former counsel's recitation of the event. *See,* Pl's Ex. 42. Similarly, the five day suspension arising out of the disciplinary hearing held on February 23, 2000 was reduced to a verbal reprimand after an arbitrator decided that the Hospital had failed to prove that it had followed the requirements of progressive discipline, even though there was just cause for issuing the suspension.

generalization that errors committed by other nurses were not recorded. *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163,* 315 F.3d 817, 822 (7th Cir. 2003) (noting that the non-moving party "must allege specific facts creating a genuine issue for trial and may not rely on vague conclusory allegations.") More importantly, when Plaintiff has offered specific examples, she has failed to demonstrate that these nurses, who were not CN IIs, are similarly situated. First, Seventh Circuit caselaw makes clear that, in general, employees and their supervisors are not similarly situated. *See Patterson v. Avery Dennison Corp,* 281 F.3d 676, 680 (7th Cir. 2002) ("To meet her burden of demonstrating that another employee is 'similarly situated', a plaintiff must show that there is someone comparable to her in all material respects.") ; *Cox v. Home Depot U.S.A., Inc.,* 2003 WL 22317631, at *5 (N.D. Il., Oct 08, 2003) (supervisors and associates are not similarly situated.) Second, Plaintiff has not pointed to any other individual who allegedly committed as many errors as Plaintiff.

Because Plaintiff cannot establish either the second or fourth elements of her prima facie case of national origin or race discrimination, in violation of Title VII and §1981, the Court grants Defendants' Motion for Summary Judgment as to Counts I and II of Plaintiff's Amended Complaint.

**III. Harassment**

Title VII provides redress to employees working in racially hostile environments. *Logan v. Kautex Textron N. Am.,* 259 F.3d 635, 641 (7th Cir. 2001). In determining whether a work environment is hostile, a court must look to the frequency of the conduct, its severity, whether it is physically threatening, and whether it alters the terms and conditions of the employment. *Id.* Teasing, offhand remarks and isolated, non-egregious incidents are not considered sufficiently severe to satisfy Title VII's definition of a hostile environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). In addition, the plaintiff must supply the court with specific details regarding the alleged harassment to enable the court to evaluate "the severity and pervasiveness of the conduct." *Gabrielle M.,* 315 F.3d at 822.

Plaintiff's Response Brief sets forth a litany of abuse and indignities that she allegedly suffered at the hands of the various Filipino nurses working in the Hospital's Pediatric Unit. She further claims that these nurses acted with the consent of her Filipino supervisors, Mrs. Montefolka and Mrs. Sapaula. Unfortunately, Plaintiff relies almost exclusively upon her own self-serving affidavit for evidence in support of these allegations. *Filippo v. Northern Indiana Public Service Corp.,* 141 F.3d 744, 750 (7th Cir. 1998) (an employee's speculation that her union retaliated against her for running for office was not sufficient to create a genuine issue of material fact.) Although

a plaintiff's self-serving affidavit may be sufficient to create a triable issue of fact, a plaintiff cannot "thwart summary judgment by speculating as to an employer's state of mind." *Payne*, 337 F.3d at 772. In this case, Plaintiff's affidavit is insufficient to defeat Defendant's Motion for Summary Judgment.

In her affidavit, Plaintiff thorough details the problems that she had with the nurses that worked with her, as well as with her supervisors. Plaintiff provides dates and names, and highlights the fact that the nurses in her unit did not like her, and that they frequently complained about Plaintiff's support, demeanor, supervision, and nursing practices. Similarly, Plaintiff's affidavit complains that she was constantly being reprimanded by her supervisor, Ms. Sapaula, for transgressions and errors that went unpunished when committed by other nurses.

Nevertheless, Plaintiff's affidavit is insufficient evidence that Plaintiff was being discriminated against. First, Plaintiff's affidavit is peppered with inadmissible hearsay evidence. "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997). Next, Plaintiff only speculates that these individuals were motivated by an animus against Plaintiff's race. *Filippo,* 141 F.3d at 750 (an employee must do more than simply speculate in her affidavit that her employer retaliated against

her.)    And while Plaintiff complains that Filipino nurses
exaggerated complaints against her to have her removed from the
floor, she cannot deny that equally serious charges were filed
against her by physicians and non-Filipino nurses[4].

Plaintiff's claim that she was disciplined for
transgressions that went unsanctioned when committed by other
nurses suffers from three problems.    First, even Plaintiff
concedes that the Hospital's policy was to keep reprimands and
disciplines discrete.    As such, it is difficult to see how
Plaintiff could have personal knowledge of whether various
nurses' transgressions and errors were documented[5]. *See, e.g.,*
*Payne,* 337 F.3d at 772 (noting that Rule 56(e) and Federal Rule
of Evidence 602 require that affidavits be based upon personal
knowledge.) Second, the Court agrees with Defendant's assertion
that, because Plaintiff occupied a supervisory role, nurses under
her supervision are not similarly situated.    *Patterson v. Avery*
*Dennison Corp,* 281 F.3d 676, 680 (7th Cir. 2002) ("To meet her
burden of demonstrating that another employee is 'similarly

---

[4]    At a minimum, Dr. Wilks (see Def. Ex. 40), Dr. Lariosa
(Def. Ex. 66), Nurse Rosemarie Tamba, Tour Supervisor of
Pediatric Nursing who was born in Sierre Leone (Def. Ex. 40), and
Nurse Barbara Douglas (Def. Ex. 39) lodged complaints against
Plaintiff for errors and deficiencies.

[5]    Many of the statements in Plaintiff's affidavit are
similarly deficient.    For example, Plaintiff states that Ms.
Sapaula secretly pressured nurses to write complaints against
Plaintiff, and that Filipino nurses sabotaged her records,
without  explaining how she knew these things to be true.

situated', a plaintiff must show that there is someone comparable to her in all material respect."); *Cox v. Home Depot U.S.A., Inc.*, 2003 WL 22317631, at *5 (N.D. Il., Oct 08, 2003) (supervisors and associates are not similarly situated.) Finally, there is no evidence in the record that the nurses who purportedly escaped discipline were Filipino and/or were not Indian, and thus does not support Plaintiff's claim of discrimination.

Plaintiff's "other evidence" also misses the mark. For example, in her Response Brief, Plaintiff argues that she was treated less favorably than (and harassed by) Filipino nurses, and that "[t]he EEOC investigated this fact in presence [sic] of Mrs. Anthony, Coordinator for Ward 76 and Mrs. Hall, Coordinator for Ward 66, who verified that the Plaintiff was treated less favorably and was harassed." In support of this statement, Plaintiff directs the Court's attention to her Ex. No. 48. Plaintiff's Exhibit 48 is an unsigned "Draft Affidavit," author unknown, which simply lists Plaintiff's recitation of the alleged harassment she endured and states, in a perfunctory fashion, that Mrs. Anthony and Mrs. Hall "will verify" Plaintiff's allegations. Conspicuously absent is any evidence that the EEOC ever even contacted Mrs. Anthony or Mrs. Hall, much less that Mrs. Anthony or Mrs. Hall actually verified Plaintiff's allegations. Plaintiff has not presented affidavits or deposition testimony

from Mrs. Anthony or Mrs. Hall supporting these assertions, or even submitted an authenticated EEOC summary of interviews with these "witnesses" to support Plaintiff's account.

Finally, Plaintiff offers evidence that Ms. Arriola, another CN II, made a racial slur when she referred to Indians as lazy. However, Seventh Circuit caselaw is clear that an isolated remark, which is neither uttered by a decisionmaker nor contemporaneous with an adverse job action, is insufficient evidence of discrimination. *Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir. 1996) ("to be probative of discrimination, isolated comments must be contemporaneous . . or causally related.") Plaintiff has demonstrated neither element, and, therefore, the remark cannot salvage Plaintiff's claim.

In summary, Plaintiff has not offered sufficient evidence from which this Court could infer that Plaintiff was harassed because of her race and national origin.

## IV. **Retaliation**

The retaliation provision of Title VII forbids an employer from discriminating "against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter [42 U.S.C. §§ 2000e to 2000e-17], or because he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter [42 U.S.C. §§ 2000e to 2000e-17]." 42 U.S.C. § 2000e-3(a). Judge

Posner created a new rule for adjudicating Title VII retaliation cases in *Stone v. City of Indianapolis Public Utilities Div.,* 281 F.3d 640, 644 (7th Cir. 2002). Under *Stone,* if a claimant does not have direct evidence of retaliation - and Plaintiff has not submitted such evidence - the claimant must show that "after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Id.*

If the claimant makes the prima facie showing, the burden of producing a legitimate reason for the discharge shifts to the employer. *See Wilson v. Chrysler Corp.,* 172 F.3d 500, 504 (7th Cir. 1999); *see also McDonnell Douglas,* 411 U.S. at 802. To prevail on summary judgment, the employer must show that it would have taken the same action against the claimant even if she had not engaged in the protected activity. *Stone,* 281 F.3d at 644 (explaining that, under such circumstances, a claimant would not have suffered cognizable damages.)

In this case, Plaintiff's retaliation claim fails for the same reason that her discrimination claims failed. Plaintiff has not produced evidence giving rise to the inference that similarly situated employees were not subjected to adverse job actions, that she was performing her job satisfactorily, and that the

Hospital would not have disciplined her if she hadn't complained of alleged harassment and discrimination.

Although Plaintiff's discipline hearings frequently came within weeks or months of her filing a charge or writing a letter of complaint to her superiors, temporal proximity, standing alone, is insufficient to create a triable issue of fact[6]. *Stone,* 281 F.3d at 644. As the Court discussed during its analysis of Plaintiff's disparate treatment claims, Defendant has produced ample evidence that it had sound, legally legitimate reasons for disciplining Plaintiff. Conversely, Plaintiff's claim that similarly-situated individuals, who did not complain or file charges of discrimination, escaped discipline are largely conclusory. As are Plaintiff's claims that her colleagues and supervisors fabricated or exaggerated her errors in an effort to drive her from her position. *See Caisse Nationale De Credit Agricole v. CBI Industries, Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party seeking to defeat a motion for summary judgment must wheel out all its artillery to defeat it.") Having failed to produce sufficient evidence to support her allegations, Defendant's Motion for Summary Judgment is granted on Plaintiff's claim of retaliation.

---

[6] This is particularly true in the instant case, as Plaintiff filed multiple EEOC charges and submitted numerous letters of complaint to her supervisors.

**V.  Plaintiff Has Not Stated A Claim Against Cook County Under § 1981[7].**

To succeed on a § 1981 claim, a plaintiff must demonstrate both a prima facie case of discrimination, and satisfy the standards set forth in *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 690 n. 55 (1978).  Under *Monell,* a plaintiff must establish that "the violation of [her] 'right to make contracts' protected by § 1981 was caused by [the government entity's] custom or policy."  *Looper Maint. Serv., Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir.1999).  A custom or policy can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law;" or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir.1994) (citations omitted).

As discussed above, Plaintiff cannot establish a prima facie case of discrimination.  In addition, she has not demonstrated the existence of a custom or policy, which purportedly enabled

---

[7]  The Court notes that Plaintiff's First Amended Complaint does not properly set forth a §1981 claim against Defendant. Both Plaintiff's and Defendant's briefs argue the issue.  Having determined that there is no merit to the claim, the Court has briefly addressed the claim in this Opinion.

her harassers to act against her. Therefore, the Court finds that Plaintiff's § 1981 action must fail.

## CONCLUSION

Having carefully reviewed the entire record, the Court finds that Plaintiff has failed to produce evidence giving rise to a genuine issue of material fact with regard to any of her claims. The Court acknowledges that Plaintiff had a difficult time interacting with the nurses in her unit and her supervisors, and would concede that Plaintiff believes she is the victim of discrimination. Nevertheless, her evidence fails to support her claims. Despite Plaintiff's efforts to comply with the Federal Rules of Evidence and of Civil Procedure, as well as the Local Rules, Plaintiff's admissible evidence is simply insufficient to create a genuine issue of material fact. Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment be, and the same hereby is, GRANTED.

Dated: November 18, 2003      E N T E R:


_Arlander Keys_
ARLANDER KEYS
United States Magistrate Judge